# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 07-CV-3265 (JFB)
_____

IN RE: STEWART ADLER,

Debtor.

STEWART ADLER,

Appellant,

VERSUS

LISA NG AND CHARMING TRADING COMPANY,

Appellees.

_____

MEMORANDUM AND ORDER
September 15, 2008
_____

JOSEPH F. BIANCO, District Judge:

The instant case is an appeal from the voluntary bankruptcy proceeding of Debtor Stewart Adler ("Debtor" or "Adler" or "appellant"), pursuant to Chapter 7 of the Bankruptcy Code, in the United States Bankruptcy Court for the Eastern District of New York ("Bankruptcy Court").

Debtor appeals from the June 13, 2007 Order ("June 13 Order") of the Honorable Joel B. Rosenthal, United States Bankruptcy Judge, granting the motion filed by plaintiffs Lisa Ng ("Ng") and Charming Trading Company ("Charming Trading" or the "Company") (collectively, "plaintiffs" or "appellees"), for partial summary judgment, in which the Bankruptcy Court (1) found Debtor's debt to be non-dischargeable under 11 U.S.C. § 523(a)(2)(A); and (2) denied Debtor a discharge under 11 U.S.C. § 727(a)(4)(A). Specifically, the Bankruptcy Court concluded (1) that findings of fraud in a state court action against corporations owned by Debtor had binding effect in the bankruptcy proceeding against Debtor and prevented Debtor from arguing that he did not obtain his debt through fraud; and (2) the automatic stay was not violated by giving these findings collateral estoppel effect, even though Debtor was severed from the state action because of his pending bankruptcy petition. Moreover, the Bankruptcy Court concluded that Debtor should be denied a discharge under Section 724(a)(4)(A) because he knowingly and fraudulently made a false oath or account with respect to filing his

petition.

Debtor appeals from the June 13 Order on the following grounds: (1) as to the Section 523 claim, the Bankruptcy Court erred (a) in finding a debt due from Adler to plaintiffs, and (b) finding Adler committed fraud; and (2) as to the Section 727 claim, the Bankruptcy Court erred (a) in finding that plaintiffs are creditors of Adler, and (b) in finding that Adler knowingly and fraudulently made a false oath or account.

As set forth below, the Court reverses the Bankruptcy Court's June 13 Order granting plaintiffs' motion for partial summary judgment. The Bankruptcy Court erred in giving collateral estoppel effect to the state court findings because Debtor was severed from the case when he filed for bankruptcy and, therefore, did not have a full and fair chance to litigate the issues in the state court proceeding. Contrary to plaintiffs' suggestion that Debtor participated in the state court proceeding because he appeared as a representative of the company, Debtor did not participate in the state court action in his individual capacity and any such participation would have violated the automatic stay. Therefore, if the state court's findings of fraud are made binding against the Debtor with respect to any alleged debt owed to plaintiffs, those findings would violate the automatic stay and would be void *ab initio*. Moreover, the Bankruptcy Court also erred in determining, on a motion for summary judgment, that Debtor should be denied a discharge in bankruptcy under Section 727(a)(4)(A) because he made false statements knowingly and with fraudulent intent with respect to the filing of his petition. The Court finds that clear disputed issues of fact, and the reasonable inferences to be drawn from those facts, exist with respect to Debtor's intent that should have been resolved only after a trial in which evidence could be considered and credibility determinations made. In short, having carefully reviewed the record, the Court concludes that the Bankruptcy Court erred in granting partial summary judgment in favor of plaintiffs, and remands the matter to the Bankruptcy Court for further proceedings consistent with this Memorandum and Order.

I. BACKGROUND

A. Facts

1. The Alleged Fraudulent Behavior

Adler was the President and sole owner of five (5) New York corporations (the "Adler Corps") that he used to import and sell denim jeans in the United States.[1] (*See* State Court Opinion, dated Aug. 4, 2005 ("State Ct. Op."), at 2.) Ng and her company, Charming Trading, served as agents in Hong Kong for several American jeanwear importers. (*Id.* at 3.) In 1997, Ng met Adler and began doing business with him as an agent for his companies. (*Id.*)

The following actions form the basis for plaintiffs' filing of the fraud claim underlying this appeal:

Plaintiffs alleged that Debtor, acting on behalf of Adler Corps, placed orders and received shipments under different corporate names. (Minson Aff., Exh. B ("State Ct.

---

[1] Adler Corps consists of: (1) J.U.N.K. Jeanswear Corporation; (2) Just Jeanswear Corporation; (3) Just Jeanswear Corportaion II; (4) Just Jeanswear Corporation III; and (5) Seruchi Jeanswear Corporation. (Pl.'s Stmt. of Undisputed Facts ¶ 1.)

Op."), at 2.) They further alleged that Adler Corps did not have sufficient funds to pay for orders up front, nor did they have sufficient credit to obtain letters of credit. (*Id.*) Plaintiffs then claim that Debtor directed Ng to use her own credit to purchase merchandise from the Hong Kong manufacturers, pay the shipping costs, and then invoiced Adler Corps for the goods, in an arrangement that allowed Debtor to rely on Ng's credit and have more time to pay her Company, instead of the manufacturers. (*Id.*) Plaintiffs claim that this arrangement continued over seven shipments. (*Id.* at 3.) On most of the transactions, Adler Corps failed to pay plaintiffs in full or in a timely manner. (*Id.* at 6.) Ng had to mortgage her home to pay some of the manufacturers, as well as shipping costs and other expenses, for merchandise received by Adler Corps. (*Id.*) Some manufacturers initiated lawsuits against Ng and her Company and one of them obtained a judgment against her. (*Id.* at 4.) The manufacturers allegedly hounded Ng to the point where she had to leave Hong Kong, abandon her business, and flee to the United States. (*Id.*)

2. The State Court Action

In July 2003, plaintiffs Ng and Charming Trading sued Debtor and Adler Corps in the Supreme Court of the State of New York. (Undisp. Facts. ¶ 1.) Plaintiffs' amended verified complaint contained eleven (11) causes of action, including fraud. (*Id.* ¶ 2.)

On August 19, 2004, the state court severed the action against Debtor because he had filed a bankruptcy petition. (State Ct. Op., at 1.) Specifically, the state court stated that it "stayed the seventh [cause of action] for piercing the corporate veil against defendant Adler . . . ." (*Id.*) The state court also struck the Adler Corps' answer for failing to comply with discovery. (Undisp. Facts ¶ 4; State Ct. Op., at 1.)

The state court held a six-day inquest and assessment of damages solely as to Adler Corps (hereinafter, the "Damages Inquest").[2] (Undisp. Facts ¶ 5.) It is undisputed that Debtor appeared at the Damages Inquest in his capacity as an officer of the Corporations. (Id. ¶ 6.) However, although Debtor was present at the Damages Inquest as a corporate representative, Debtor notes that Debtor did not testify in the state action, present evidence, or participate in the Damages Inquest. (Def.'s Br., at 11.) Plaintiffs do not provide any evidence to refute that contention and the record does not reflect any participation by Debtor. Instead, at the Damages Inquest, Ng testified for plaintiffs and was cross-examined. (Undisp. Facts ¶ 7.) Plaintiffs also submitted extensive documentary evidence. (*Id.*)

On August 4, 2005, the state court issued an eight-page decision (the "Decision") resulting in a $2,025,841.97 judgment against Adler Corps. (*See* Minson Aff., Exh. B.) The portion of the Decision relating specifically to Debtor's conduct forms the basis of the instant appeal. Specifically, the state court stated:

> [P]laintiff Lisa Ng is entitled to an additional recovery as a direct result of the defendant

---

[2] The dates of the Inquest were June 13, 2005, June 17, 2005, July 11-13, 2005, and July 15, 2005. (*Id.*) At that Inquest, the Court specifically stated that the issues would be limited to "the extent of damages the plaintiff[s] . . . sustained because of the defendant corporations' liability." (State Ct. Op., at 1.)

3

corporations['] fraud on her. *Mr. Adler, on behalf of the corporations, represented to Ms. Ng* that if she paid manufacturers and shipping and other costs to send the garments to the United States, his corporations would not only reimburse her but also pay past due commissions because the corporations had the present capacity to complete the transactions . . . .

*The evidence shows that Mr. Adler and the corporations had no intention of carrying out these representations or the present capacity to do so.* In reliance on these misrepresentations, Ms. Ng had a mortgage placed on her home, allowed companies to invoice to plaintiff Charming Trading Company, paid many of the invoices, was threatened when she could no longer pay, was sued in China and Hong Kong and fled to the United States. That experience as well as her past and future loss of income are not subsumed in the other causes of action. The credible evidence establishes that, as a direct result of the fraud and resulting debt . . . Ms Ng's total income loss caused by defendants' fraud is $209,675.

(State Ct. Op., at 7) (emphases added). Plaintiffs contend that the Decision contained extensive findings of fact regarding Debtor's fraudulent conduct. (Undisp. Facts ¶ 8.)

However, Debtor disagrees, arguing that the Decision improperly included dicta relating to Debtor's liability, which was severed from the case. (Counter-Statement Undisp. Facts ¶ 8.)

3. The Bankruptcy Filing

On July 28, 2004, Debtor filed a Chapter 7 bankruptcy petition (the "Petition") with the Bankruptcy Court. (Undisp. Facts ¶ 11.) The Petition included Schedules of Assets and Liabilities ("Schedules") and a Statement of Financial Affairs ("SOFA"). The Schedules and SOFA required Debtor to disclose detailed information about his assets, liabilities, and financial affairs. As discussed more in detail *infra*, plaintiffs allege that there were various mistakes and omissions in the petition warranting a denial of discharge in bankruptcy. Defendants dispute that any such errors were fraudulent or intentional.

On April 25, 2005, plaintiffs filed a complaint with the Bankruptcy Court alleging seven causes of action: three claims objecting to the dischargeability of debt under Sections 523(a)(2)(A), (a)(4), and (a)(6), and four claims objecting to the Debtor's discharge under Sections 727(a)(2), (a)(3), and (a)(5).

On December 17, 2006, plaintiffs filed a motion for partial summary judgment on the first and sixth causes of action – 523(a)(2)(A) and 727(a)(2).[3] Argument was held by the Bankruptcy Court on June 13, 2007. At the conclusion of the argument, without an evidentiary hearing, the Court issued a

---

[3] The Section 523(a)(2)(A) claim alleges that Debtor used his companies to perpetrate a fraud upon plaintiffs. The Section 727(a)(2) claim alleges that Debtor knowingly and fraudulently made false oaths in connection with the bankruptcy case.

4

decision on the record granting the motion. (Hr'g Tr., at 21.) The Bankruptcy Court held that plaintiffs were entitled to summary judgment on the first cause of action under the doctrine of collateral estoppel or, alternatively, that "the judge's findings in state court would be admissible" and, thus, the necessary elements for plaintiffs' fraud claim under 523(a)(2)(A) were satisfied. (*Id.* at 21-22.) The Bankruptcy Court rejected Debtor's argument that the automatic stay prevented the state court from issuing findings of fraud involving Debtor:

> They're not finding[s] against [the Debtor]. They're findings of fact that certain things happened. They may have happened because the debtor was involved, but I don't see that 362(a)(1) [automatic stay] . . . prevent[s] those statements . . . .

(*Id.* at 14.) The Bankruptcy Court also held that Debtor was not entitled to a discharge because he "demonstrate[d] a reckless disregard for his responsibilities under the Code to provide full and complete schedules and affairs."[4] (*Id.*)

---

[4] The Bankruptcy Court further elaborated:

> I don't see that any serious effort was made by the debtor here to either submit accurate and complete schedules and statement of affairs or when he was asked and told that there were . . . deficiencies that had to be corrected . . . that the debtor made any serious or reasonable effort, and I think that does demonstrate a reckless disregard for his responsibilities under the Code to provide full and complete schedules and statement of affairs, and from that disregard and from the failure, the undisputed errors I think the Court is entitled to, because of the materiality of these issues, to infer fraudulent intent, and for those reasons I will find that a discharge will not – that the sixth cause of action for false and misleading statements and failure to provide appropriate answers, that under 727(a)(4)(a) the discharge will be denied.

(*Id.* at 23.)

II. STANDARD OF REVIEW

Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that a reviewing court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," or it may remand with instructions for further proceedings. *See* Fed. R. Bank. P. 8013.

The Court will review the Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error. *See Denton v. Hyman (In re Hyman)*, No. 05-7026-BK, 2007 WL 2492789, at *3 (2d Cir. Sept. 6, 2007); *see also Lubow Mach. Co. v. Bayshore Wire Prods. (In re Bayshore Wire Prods.)*, 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error, . . . its conclusions of law de novo, . . . its decision to award costs, attorney's fees, and damages for abuse of discretion."); *accord Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs)*, 922 F.2d 984, 988-89 (2d Cir. 1990).

"The question of a debtor's knowledge

5

and intent under §727(a)(4) is a matter of fact . . . ." *Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000) (internal citations omitted); *Weiss v. Winkler*, No. 98-CV-5742 FB, 2001 WL 423050, at *3 (E.D.N.Y. Mar. 30, 2001). However, a bankruptcy court's decision to grant summary judgment based upon undisputed facts is reviewed *de novo*. *See Bank of N.Y. v. Treco (In re Treco),* 240 F.3d 148, 155 (2d Cir. 2001) ("[W]ith respect to the grant of partial summary judgment, the posture in which this appeal reaches us, we review *de novo* whether, viewing the record in the light most favorable to the non-movant . . . any genuine and disputed issue of material fact underlies the bankruptcy court's decision."); *Perosio v. NBT Bank Nat'l Ass'n (In re Perosio),* 364 B.R. 868, 871 (N.D.N.Y. 2006) ("This Court also reviews the Bankruptcy Court's denial of Appellants' motions for summary judgment *de novo*."); *accord Beier v. Beier*, No. 94 Civ. 2677 (SS), 1995 WL 60026, at *2 (S.D.N.Y. Feb. 14, 1995).

III. DISCUSSION

Debtor argues that the Bankruptcy Court erred in granting plaintiff's partial motion for summary judgment. Specifically, Debtor contends that the Bankruptcy Court erred in (1) declaring Adler's debt to be non-dischargeable pursuant to Section 523(a)(2)(A); and (2) denying Adler's discharge pursuant to Section 727(a)(4)(A) on a motion for summary judgment.

Federal Rule of Civil Procedure 56(c) is made applicable to the Bankruptcy Court through Bankruptcy Rule 7056. *See* Fed. R. Bank. P. 7056 ("Rule 56 F. R. Civ. P. applies in adversary proceedings."). Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.,* 492 F.3d 89, 96 (2d Cir. 2007). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson,* 477 U.S. at 248 (finding summary judgment to be unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"); *Rivkin v. Century 21 Teran Realty LLC,* 494 F.3d 99, 103 (2d Cir. 2007). As such, "if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original). The Court will review the Section 523 claim and the Section 727 claim in turn under this standard.[5]

---

[5] Although the Debtor disputes that he owes a debt to plaintiffs and argues that plaintiffs lack standing under Section 523 or to object to his discharge under Section 727, the term "claim" under the Bankruptcy Code is defined very

A. Denying Debt as Non-Dischargeable Pursuant to Section 523(a)(2)(A)

Debtor argues that the Bankruptcy Court erred in denying his alleged debt to plaintiffs as nondischargeable, pursuant to Section 523 of the Bankruptcy Code, on summary judgment. Specifically, Debtor contends that the Bankruptcy Court erred in finding that Debtor committed fraud in obtaining money from the plaintiffs by applying the doctrine of collateral estoppel to findings in a state court proceeding against Adler Corps. The Court agrees.

The Bankruptcy Code discharges preexisting debts in order to give "honest but unfortunate" debtors a fresh start. *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998). However, the Bankruptcy Code contains numerous exceptions to the "fresh start" principle and denies relief to debts resulting from certain types of undesirable behaviors, such as fraud. Section 523(a)(2)(A) provides, in relevant part, that:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . .

11 U.S.C. § 523(a)(2)(A).

As set forth below, the Bankruptcy Court erred in utilizing the doctrine of collateral estoppel to deny Debtor's debt discharge, pursuant to Section 523(a)(2)(A). Specifically, the Bankruptcy Court concluded that the issue as to Debtor's fraud liability was fully litigated in the state court and, therefore, the Debtor was precluded from relitigating the same issue in the context of a Section 523 denial of debt discharge. However, the Bankruptcy Court erred in applying the doctrine of collateral estoppel to the state court judgment because Debtor's individual action was severed from the state court proceeding due to his bankruptcy filing and, therefore, he did not have a full and fair opportunity to litigate the fraud issue. In fact, as discussed below, if the state litigation had a binding collateral estoppel effect on the Debtor (which it does not), the finding would have violated the automatic stay and would be void.

1. Collateral Estoppel

Collateral estoppel (or issue preclusion) precludes a party from relitigating an issue that was "raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action." *Balderman v. U.S. Veterans Admin.*, 870 F.2d 57, 62 (2d Cir. 1989). It is well settled that the doctrine of collateral estoppel also applies in bankruptcy proceedings. *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (citing

---

broadly to include disputed claims. 11 U.S.C. § 101(5). In fact, Debtor listed plaintiffs as creditors in the Petition on Schedule E. The fact that Debtor might dispute the existence or amount of plaintiffs' claim does not impact plaintiffs' status as creditors. Thus, the Court rejects Debtor's argument that plaintiffs lack standing in connection with these claims.

7

*Grogan v. Garner*, 498 U.S. 279, 285-91 (1991) (holding that where a judgment entailed proof of fraud, the debtor was estopped in a subsequent nondischargeability proceeding from relitigating whether the underlying debt was obtained by fraud)); *see also Giaimo v. DeTrano (In re DeTrano)*, 326 F.3d 319, 322 (2d Cir. 2003) (holding that "[w]here the debt in question is a judgment entered after a claim of fraud has been adjudicated, either party to a subsequent adversary proceeding on nondischargeability can invoke collateral estoppel to establish that the debt is or is not dischargeable under the relevant nondischargeability provision").

In giving preclusive effect to a decision or judgment, courts look to the law of the state in which the decision or judgment was rendered. *See, e.g., Evans*, 469 F.3d at 281(citing *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)) (applying New York law) ; *Bard v. Appel (In re Appel)*, 315 B.R. 645, 648 (E.D.N.Y. 2004) (applying Florida law); *Arizona Tomato, L.L.C. v. Guccione (In re Guccione)*, 268 B.R. 10, 14 (Bankr. E.D.N.Y. 2001) (applying Arizona law). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans*, 469 F.3d at 281 (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455-56 (N.Y. 1985)). "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues . . . whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue." *Evans*, 469 F.3d at 281-82 (citation and internal quotation marks omitted).

"[C]ollateral estoppel effect will only be given to matters actually litigated and determined in a prior action," because "[i]f an issue has not been litigated, there is no identity of issues." *Kaufman*, 65 N.Y.2d at 456 (internal quotation marks omitted); *D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 667 (N.Y. 1990) ("[F]or a question to have been actually litigated so as to satisfy the identity requirement, it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding."). The Second Circuit recently decided that fraud under Section 523(a) of the Bankruptcy Code was identical to the elements of fraud under New York law. *See Evans*, 469 F.3d at 283 (affirming district court's grant of summary judgment, where the district court denied debtor's discharge pursuant to Section 523(a)(2) and applied collateral estoppel to state court's finding of fraud). Here, it is unclear whether plaintiffs have satisfied part one of New York's preclusion test. Given that the case against Debtor was severed and stayed, the issue of fraud as it relates to Debtor individually was never determined, even though the state court found the corporations to be liable for fraud. Regardless, even assuming *arguendo* the fraud claim in the state proceeding was identical to that in the bankruptcy proceeding, plaintiffs still fail part two of New York's preclusion test for the reasons discussed below.

Debtor argues that he was not given a "full and fair" opportunity to litigate the issue of fraud because he was severed from the state court action and the proceeding was stayed as to him. (Def.'s Br., at 16.) The Court agrees. As discussed below, the question of Debtor's

8

liability could not, and was not, addressed by the state court judge at the damages inquest for the corporations. The imposition of the automatic stay clearly precluded defendant from participating in the proceedings. Although plaintiffs disagree and argue that Debtor appeared and participated in the inquest on damages in the state court lawsuit, the Court finds no basis for such an argument. Other than being physically present at the proceedings as a representative of the companies, plaintiffs have produced no evidence to indicate that Debtor actually participated in defending against his own liability. In fact, the record of the hearing on the motion for summary judgment before the Bankruptcy Court indicates the opposite:

> The Court: Did the – do you disagree that the debtor testified under oath in his capacity . . . as an officer?
>
> Mr. Braverman: I disagree that the debtor testified. I don't believe he did, your Honor. The debtor did not testify. The plaintiff testified, as a plaintiff has to do in order to establish . . . the amount of damages.

(Hr'g Tr., at 12.) The state court proceeding was purely an inquest into damages regarding the corporations' liability. It is axiomatic that, contrary to plaintiffs' contentions that Debtor could have participated or cross-examined but chose not to do so because of trial strategy, Debtor's participation in such a proceeding would have violated the automatic stay.[6]

Instead, plaintiffs rely on *Evans v. Ottimo* in arguing that plaintiffs were entitled to summary judgment based upon principles of collateral estoppel. In *Evans*, a New York state court, following a default judgment and an inquest, found defendants to have committed fraud. 469 F.3d at 280. Defendants then filed for bankruptcy and plaintiffs commenced an adversary proceeding in bankruptcy court to obtain a judgment denying defendants' debt to be dischargeable under Section 523(a)(2). (*Id.*) Plaintiffs moved for summary judgment on the grounds of collateral estoppel, arguing that the state court already determined that defendants were liable for fraud. (*Id.*) The Bankruptcy Court denied plaintiffs' motion. (*Id.* at 280-81.) The district court reversed the bankruptcy court's order, finding that collateral estoppel barred defendant debtors from relitigating in bankruptcy court the issue of whether the debt was nondischargeable under Section 523(a). (*Id.* at 281.) The Second Circuit affirmed the district court, finding that debtor had a full and fair opportunity to litigate the issue of fraud in state court, and that fraud under Section 523 was the same as fraud under New York State law. (*Id.* at 282-83.)

*Evans* is clearly distinguishable from the case at bar. In *Evans*, the state court judgment of liability was issued prior to the debtor filing the bankruptcy proceeding. Therefore, an automatic stay was not in place to prevent the debtor from participating in the state court proceeding. Rather, the debtor defaulted by failing to answer, essentially making the choice not to litigate. It is well settled that

---

[6] Although counsel for Adler Corps did cross-examine plaintiff at the Damages Inquest, the attorney clearly was acting at that Inquest as the attorney for the corporations, and not Debtor in his individual capacity. Moreover, because the inquest only related to damages, liability was not litigated in the state court proceeding.

9

"[i]n New York, when a party defaults by failure to answer . . . the defaulting litigant may not further contest the liability issues." *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987) (citations omitted); *see also In re Appel*, 315 B.R. at 649 ("Failure to defend is not the same as not having the opportunity to defend.") (citation and internal quotation omitted). In such a situation, the court held that the debtors "were afforded a full and fair opportunity to litigate the issue of fraud in state court." *Evans*, 469 F.3d at 282. Here, however, debtor was not afforded such an opportunity. In fact, because he filed his bankruptcy petition prior to the state court judgment, he was severed from the proceeding and prohibited from participating due to the automatic stay.

Plaintiffs alternatively argue that the non-debtor corporations (Adler Corps) had the opportunity to fully and fairly litigate fraud against them and, because Debtor is the alter ego of the corporation, the two are essentially the same entity. This argument fails on a variety of grounds.

First, as discussed above, because Debtor was severed from the proceeding, there was no ability for him to defend or dispute any claims against him individually – including the threshold issue of whether Debtor was the alter ego of the corporation. The state court specifically "stayed the seventh [cause of action] for piercing the corporate veil against defendant Adler . . . ." (*Id.*) The state court severed Debtor from the proceeding and made findings of fraud without the Debtor being allowed to mount a challenge. Moreover, these findings occurred at the Inquest, which was solely limited to the amount of damages of the corporations – the liability of the corporations was essentially undisputed due to the striking of the answer.

Appellees also cite to New York case law in arguing that owners cannot shield themselves from liability of their corporations for collateral estoppel purposes because of privity between the owner and the corporation. None of the cases cited by Appellees deal with the situation here, where the owner was severed from the prior proceeding and, therefore, prevented from defending his individual liability. In fact, in cases cited by Appellees, the courts specifically indicate that the owners had such an opportunity to defend. *See, e.g., Shire Realty Corp. v. Schorr*, 55 A.D.2d 356, 358 (N.Y. App. Div. 1977) ("It is undisputed that the arbitration proceeding, although processed in the name of J. Schorr & Co., Inc, was in fact filed on the corporation's behalf by the defendants who, during the several days of lengthy hearings, all appeared, testified on direct examination and were cross-examined."); *In re Shea's Will*, 309 N.Y. 605, 617 (N.Y. 1956) ("[A]ll of the stockholders of a family corporation . . . have appeared and participated in the prior action which resulted in an unfavorable adjudication."). Here, Debtor did not participate in the state court proceeding in his individual capacity because of the automatic stay and, thus, these cases are inapposite.[7]

---

[7] In fact, to the extent Appellees argue that Debtor and non-debtor entities (corporations) are a single entity for purposes of collateral estoppel, there is some case law that suggests that the automatic stay would then extend to cover the non-debtor corporations as well. Some courts, including district courts in this Circuit, have recognized limited situations in which a Section 362 automatic stay may apply to actions against non-bankrupt defendants. *See, e.g., S.I. Acquisition, Inc. v. Eastway Delivery Serv. Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1147 (5th Cir. 1987) (extending automatic stay where non-bankrupt party can be considered one entity or as

having a unitary interest); *N. Star Contracting Corp. v. McSpedon (In re N. Star Contracting Corp.)*, 125 B.R. 368, 370 (S.D.N.Y. 1991); *Lomas Fin. Corp. v. N. Trust Co. (In re Lomas Fin. Corp.)*, 117 B.R. 64, 68 (S.D.N.Y. 1990). Although the Second Circuit has not decided whether there are circumstances that would warrant extension of the stay to a non-debtor corporation, it has held that extending the stay to non-debtor corporations who are acting in bad faith to avoid liability from an adverse judgment is unwarranted. *See Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65-66 (2d Cir. 1986) ("While we decline to define under what circumstances, if any, a bankruptcy court may properly exercise § 105 jurisdiction to issue a stay with respect to non-bankrupt co-defendants, it is clear that any such jurisdiction cannot extend to efforts made in bad faith by non-bankrupt co-defendants in order to escape from the liability imposed by an adverse district court judgment."). In *Garrity v. Hospital Consultants, Inc. (In re Neuman)*, 128 B.R. 333 (S.D.N.Y. 1991), the court addressed this precise issue. In *Neuman*, shareholders brought a derivative action against a parent corporation, its subsidiaries, and the two majority shareholders at a time after the majority shareholders filed for bankruptcy. 128 B.R. at 334-35. The debtor majority shareholders then brought a contempt proceeding before the bankruptcy court against the shareholders for violating the automatic stay. *Id.* at 335. The bankruptcy judge ruled in favor of the debtor. *Id.* The shareholders appealed, and the district court affirmed the bankruptcy court. *Id.* at 337. In particular, the district court stated:

> Given the relationship between the [non-debtor corporation] and the [debtors], specifically that the [debtors] own approximately 78% of the [corporation's] stock . . . it appears that there is such an identity between the entities as to render the state court suit in violation of the stay.

Second, plaintiffs' argument that the corporations and the Debtor are one entity, and thus Debtor can be subject to collateral estoppel based on findings related to the corporations, is completely incongruous with their argument regarding the automatic stay, discussed *infra*. Plaintiffs argue that the state court did not violate the automatic stay because Debtor was severed from the proceeding and judgment was only with respect to Adler Corps. If, as plaintiffs now argue for collateral estoppel purposes, the Debtor and the corporations are a single entity (and that the corporations' participation in the state court proceeding was essentially the same as the Debtors), then the automatic stay was violated because proceedings against Adler Corps would be the equivalent of proceeding against the Debtor. The Court will now turn to the automatic stay issue.

2. Automatic Stay

The state court's findings against Adler Corps did not violate the automatic stay. However, if the state court finding during the Adler Corps state action was also found to be binding against Debtor on the issue of fraud under the doctrine of collateral estoppel, that finding would clearly violate the automatic stay.

---

*Id*. Here, the Court does not find any basis in the record for application of this limited exception to Adler Corps and there was no legal barrier preventing the state court from proceeding, as it did, against the non-bankrupt corporations after severing the Debtor. Instead, the Court finds that the Bankruptcy Court erred in granting summary judgment on collateral estoppel grounds against the Debtor, who had been severed from the proceeding due to bankruptcy.

11

Section 362 of the Bankruptcy Code automatically stays all proceedings against the debtor:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78(a)(3)), operates as a stay, applicable to all entities, of-
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

Debtor cites to a variety of cases in this Circuit where courts have found that judicial actions taken against a debtor in violation of Section 362(a) are void *ab initio*. *See, e.g., 48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.)*, 835 F.2d 427 (2d Cir. 1987); *Sheriden Woods Health Care Center, Inc. v. Floyd (In re Floyd)*, 359 B.R. 431 (Bankr. D. Conn. 2007); *In re Braught*, 307 B.R. 399 (Bankr. S.D.N.Y. 2004). Moreover, plaintiffs have not cited to any legal authority where a court was permitted to make factual findings against a defendant severed from a case because of an automatic stay, and those findings were later allowed to be binding against that defendant.[8] The state court's judgment related only to the non-bankrupt corporations. Any language imposing such liability upon the severed Debtor is *dicta*, and is not binding upon the Debtor. To the extent that such language was meant to be binding, it would violate the automatic stay. *See, e.g., Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*, 945 F. Supp. 603, 606 (S.D.N.Y. 1996) (holding that a Report and Recommendation, which refers to a severed defendant, did not violate the automatic stay against that defendant and that "[d]efendants offer no support for the proposition that a recommendation alone, *having no binding legal effect*, could violate the automatic stay provisions of the Bankruptcy Code.") (emphasis added). The entire purpose behind the automatic stay is to prevent courts from imposing liability on debtors who are attempting to reorganize in bankruptcy. To allow a court, as here, to impose liability in a proceeding that Debtor was not even a part of, would be completely contrary to the

---

[8] The plaintiffs cite to a single case from outside of this Circuit in an attempt to show that debtors in bankruptcy are subject to the principle of collateral estoppel from actions outside of the bankruptcy court. *See, e.g., Am. Film Techs. v. Taritero (In re Film Techs., Inc.)*, 175 B.R. 847 (Bankr. D. Del. 1994). This case, however, does not support plaintiffs' position. In fact, the court permitted a debtor corporation, under California state law, to extend the automatic stay to cover the prosecution of state court claims against its former and present directors. *Id.* at 855. Therefore, this case supports the conclusion that the state court findings against the non-debtor Adler Corps would violate the automatic stay if they had collateral estoppel effect on the Debtor.

12

Bankruptcy Code.[9]

Plaintiffs' argument that the state court action was not subject to the automatic stay because it was solely against the non-debtor corporations is similarly meritless. The Court recognizes the well established principle that the automatic stay does not apply to actions against non-debtor third parties. *See, e.g., Teachers Ins. & Annuity Ass'n of Am v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) (holding that although the automatic stay applied to debtor partnership, it did not apply to non-debtor partners); *Bidermann Indus. U.S.A., Inc. v. Zelnik (In re Bidermann Indus. U.S.A., Inc.)*, 200 B.R. 779, 783 (Bankr. S.D.N.Y. 1996) (refusing to apply automatic stay to non-debtor defendant). However, Debtor is not even contending that the action against Adler Corps was in error; rather, Debtor's argument is that any findings by the state court in that action cannot have a binding effect against Debtor because of the existence of the automatic stay. The Court agrees.

In sum, although this Court reaches no conclusion as to whether the Debtor committed fraud, the Court concludes that the Bankruptcy Court erred in applying collateral estoppel in the bankruptcy proceeding to find fraud liability against the Debtor. *See, e.g., Elletson v. Riggle (In re Riggle),* 389 B.R. 167, 179 (D. Colo. 2007) ("The record on appeal does not show that the issue of fraud was actually litigated [in state court], nor that Appellant had a full and fair opportunity to present his case. Therefore, I reverse the Bankruptcy Court's holding that summary judgment barring relitigation of Appellant's fraud under the doctrine of collateral estoppel was appropriate in this case, and remand to the Bankruptcy Court to determine anew the issue of Appellant's fraud."). It is undisputed that the Debtor was severed from the case and, therefore, the Court finds that he did not have a full and fair chance to litigate at the state court proceeding. Thus, this Court concludes that collateral estoppel cannot apply. In any event, if the factual findings made in the state proceeding with respect to the corporation were binding against the Debtor under the doctrine of collateral estoppel, such a result would violate the automatic stay and be void as a matter of law. Accordingly, the Bankruptcy Court erred in denying Debtor's debt as non-dischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code based upon the doctrine of collateral estoppel. Instead, the Bankruptcy Court must give Debtor a full opportunity to litigate these issues in the bankruptcy proceeding.[10]

B. Denial of Discharge Pursuant to Section 727(a)(4)(A)

Debtor also argues that the Bankruptcy Court erred in denying him a discharge pursuant to Section 727 because any errors or omissions in the filing of his bankruptcy petition were in good faith. Specifically, Debtor argues that summary judgment was unwarranted on the issue of his intent given

---

[9] The Court also notes that the Damages Inquest was solely limited to testimony and evidence relating to the amount of damages owed by Adler Corps. Under such circumstances, there would be no basis for the state court to make such factual determinations imposing liability upon the Debtor, especially where the Debtor was severed from the proceeding.

[10] As noted *supra*, Debtor disputes the existence and/or amount of any debt owed to plaintiffs. To the extent it becomes necessary on remand, the Bankruptcy Court should also address those issues.

13

the disputed facts regarding Debtor's state of mind and, instead, that issue should have been decided only after a trial by the Bankruptcy Court. As discussed below, the Court agrees that the denial of discharge under Section 727 should not have been decided on summary judgment based on the record before the Bankruptcy Court.

Section 727(a)(4)(A) of the Bankruptcy Code provides the following:

> (a) The court shall grant a debtor a discharge, unless --
> (4) the debtor knowingly and fraudulently, in or in connection with the case --
> (A) made a false oath or account.

11 U.S.C. § 727(a)(4)(A). A debtor's bankruptcy petition and the accompanying schedules constitute statements under oath for purposes of this Section. *See, e.g., Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994). The Second Circuit has made clear that a denial of discharge pursuant to § 727 is a severe sanction and must be construed strictly in favor of the debtor. *See State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996) (citation omitted).

Therefore, it is well established that to prove an objection to discharge under § 727(a)(4)(A), the party objecting to discharge must establish by a preponderance of the evidence that: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent, and (5) the statement related materially to the bankruptcy case." *Dubrowsky v. Estate of Perlbinder (In re Dubrowsky)*, 244 B.R. 560, 572 (E.D.N.Y. 2000) (citations omitted). Once the moving party meets its initial burden to produce evidence of a false statement, the burden of production shifts to the debtor to produce a "credible explanation." *Casa Invs. Co. v. Brenes (In re Brenes)*, 261 B.R. 322, 334 (Bankr. D. Conn. 2001). However, the overall burden of proof remains with the moving party. *See., e.g., BTE Concrete Formwork, LLC v. Arbaney (In re Arbaney),* 345 B.R. 293, 301 (Bankr. D. Colo. 2006).

"A debtor's petition and annexed schedules constitute a statement under oath for purposes of § 727(a)(4)(A)." *In re Gannon*, 173 B.R. at 320. "Omissions as well as affirmative misstatements qualify as false statements for Section 727(a)(4)(A) purposes." *Republic Credit Corp. I v. Boyer (In re Boyer)*, 367 B.R. 34, 45 (Bankr. D. Conn. 2007), *aff'd*, 384 B.R. 44 (D. Conn. 2008). It is undisputed that the omissions and misstatements in Debtor's petitions satisfy elements one and two. Moreover, neither party disputes that any such errors were material to the bankruptcy case. Therefore, the only issues remaining are whether the Debtor knew the statements were false and whether he intended to deceive.

Plaintiffs argue that Debtor did not provide a "complete disclosure" of his assets, liabilities, and financial condition in order to obtain a discharge. Specifically, plaintiffs allege that Debtor: (1) did not fill out Schedule I which required information about his current income, but instead, wrote "not applicable"; (2) did not disclose any information about his business expenses in his Schedule J; (3) did not disclose his gross income for the two years prior to the bankruptcy case, as required in the SOFA; (4) did not list his companies as co-debtors as

required by his Schedule G; and (5) wrongfully listed plaintiffs in the Schedule E, which is for priority claims. (Appellee's Br., at 5.)

Moreover plaintiffs argue that Debtor was examined under oath by the Chapter 7 Trustee at the meeting of creditors (the "Meeting"). Plaintiffs provide evidence that, at the Meeting, Debtor swore all of the information in the Petition was true and correct. (Minson Affirm., Exh. E.) Plaintiffs also provide evidence that as the examination progressed, information kept coming out that was not contained in the petition (*i.e.*, Debtor admitted to having monthly income of $4,000 and annual business expenses of $50,000). (*Id.*) The record shows that the Trustee instructed Debtor to complete Schedule I and identify his business expenses in Schedule J, but Debtor never filed any amended schedules.

The record also reflects that, on March 7 and 10, 2005, plaintiffs' counsel examined Debtor under oath pursuant to Bankruptcy Rule 2004 (the "Rule 2004 Meeting"). Plaintiffs provided evidence that Debtor admitted his annual income from 2002 until his bankruptcy filing in July 2004 was in excess of $200,000 and not "approx. $19,000" as stated in the SFA.

Moreover, the record reflects that, at the Meeting, Debtor denied ever transferring money to a family member. Similarly, the record shows that, at the Rule 2004 Meeting, Debtor continued to deny that transfers had been made by this companies to his wife, stating "Not one penny. Ever. End of story." However, plaintiffs provide evidence that Debtor, in response to the summary judgment motion, admitted that one of his companies made various payments that were deposited into his wife's account. (Adler Aff. 15; Counter-Statement 30-31.) He also admitted that he "sometimes" deposited paychecks into his wife's bank account. (Adler Aff. 15.) Plaintiffs also point to cancelled checks by Adler's companies (included in Debtor's reply papers), showing hundreds of thousands of dollars being transferred from 1997-2005 to or for the benefit of his wife. (Conover Affirm., at 4-6.)

Debtor disputes plaintiffs contentions, arguing that he has "fully and completely disclosed all required information to the Court, the Trustee and his creditors." Debtor also argues that any errors in the Petition or SOFA are the result of a simple or honest mistake or inadvertence.

Specifically, Debtor explains that: (1) "Schedule 'H' of the Petition which contains the notation 'None–Not Applicable' is accurate, as Adler does not have any co-debtors, and no corporation in which he holds any interest has filed a bankruptcy petition"; (2) "Schedule 'J' of the Petition accurately only lists Adler's individual monthly expenditures because as Adler is the only debtor in this case it would be improper to list the liabilities of corporate entities in Schedule J"; and (3) "Adler fully believed that the following information was included in the Petition and SFA at the time they were filed . . ." (Def.'s Br., at 21.)

Moreover, Debtor argues that he appeared at the Section 341 meeting and fully answered all questions asked. In addition, at that meeting, Debtor and his lawyer provided additional information to the Trustee, such as the list of corporations. Debtor argues that, at that meeting, his lawyer agreed to provide the Trustee with various documents he requested, such as the state court pleadings and Adler's tax returns. Debtor argues that it was an

15

oversight that his lawyer did not prepare the amended Schedules and SOFA until recently. Finally, with respect to the check transfers to his wife, Debtor argues that such checks were deposited in his wife's account, and his wife would advance expenses for the Corporation, because Debtor did not have a personal or corporate credit card.

Fraudulent intent under this section "must be shown by actual, not constructive fraud, although a 'reckless indifference to the truth' also suffices." *In re Klutchko*, 338 B.R. 554, 567 (Bankr. S.D.N.Y. 2005) (citation omitted); *see also Sanderson v. Ptasinski (In re Ptasinski)*, 290 B.R. 16, 22-23 (Bankr. W.D.N.Y. 2003) (holding that a court may find intent to deceive in a "reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering" but not in mere ignorance or carelessness) (citing *Diorio v. Kreisler-Borg Constr. Co.*, 407 F.2d 1330 (2d Cir. 1969)). "The requisite intent may be found by inference from all of the facts." *In re Bressler*, 2008 Bankr. LEXIS 754 at *6 (citing 6 Collier on Bankruptcy, ¶ 727.04[1][a] at 40 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2007)). In the instant case, the Debtor disputes the facts plaintiffs use to support their claim that Debtor acted fraudulently. Although summary judgment may be warranted in certain circumstances even when examining state of mind, courts must be cautious in such cases and, as a result, Section 727(a)(4) disputes regarding intent are generally decided after a trial/evidentiary hearing resolving such factual issues. *See, e.g., Wisell v. Wisell (In re Wisell),* Bankr. No. 04-11269, 2006 WL 723498, at *2 (Bankr. D. Vt. Mar. 20, 2006) ("[A]fter reviewing the jurisprudence . . . within the Second Circuit, this Court is persuaded that, absent extraordinary circumstances, the factual determination of whether a debtor's schedules contain fraudulent oaths should not be made without the Court taking the opportunity to assess the credibility of defendant through live testimony. Therefore, this Court will conduct an evidentiary hearing in this case before making a determination of whether Defendant perpetrated a fraud and must be denied a discharge under § 727(a)(4)(A). "); *see also Steibel v. Bressler (In re Bressler)*, Bankr. No. 06-11897 (AJG), 2008 Bankr. LEXIS 754, at *34 (Bankr. S.D.N.Y. Mar. 10, 2008) ("In determining whether a discharge should be denied under Section 727(a)(4)(A), [Debtor's] credibility at the hearing will also bear on the Court's decision."); *FL Receivables Trust 2002-A v. Fernandez (In re Fernandez)*, Bankr. No. 06-20296, 2008 WL 268975, at *8 (Bankr. D. Conn. Jan. 29, 2008) (holding that, on a Section 727(a)(4) claim, "[t]he court concludes that there are genuine issues of material fact that preclude it from granting summary judgment and that the fifth count should proceed to trial at which the parties will have the opportunity to present their evidence to the court"); *In re Boyer*, 367 B.R. at 46 (deciding Section 727(a)(4) claim after trial).

Here, despite the existence of factual disputes and competing inferences to be drawn from the record regarding Debtor's intent, the Bankruptcy Court decided the issue of intent on summary judgment. In doing so, the Bankruptcy Court appeared to make credibility assessments regarding Debtor's intent and found his explanations for his errors not to be credible, without giving the Debtor an opportunity to testify. (*See* Hr'g Tr., at 22 ("I think plaintiff suggests discretion is available to the court. I'm not sure it's so much discretion as you have to weight the magnitude of the issues and what's happened

here and what the debtor did and didn't respond. . . .") Specifically, the Bankruptcy Court stated on the record:

> I don't see that any serious effort was made by the debtor here to either submit accurate and complete schedules and statement of affairs or when he was asked and told that there were . . . deficiencies that had to be corrected . . . that the debtor made any serious or reasonable effort, and I think that does demonstrate a reckless disregard for his responsibilities under the Code to provide full and complete schedules and statement of affairs, and from that disregard and from the failure, the undisputed errors I think the Court is entitled to, because of the materiality of these issues, to infer fraudulent intent, and for those reasons I will find that a discharge will not – that the sixth cause of action for false and misleading statements and failure to provide appropriate answers, that under 727(a)(4)(a) the discharge will be denied.

(*Id.* at 23.) It is well settled that judgments as to the credibility of the explanations are not to be decided at the summary judgment stage. *See Steibel v. Bressler (In re Bressler)*, 387 B.R. 446, 459-61 (Bankr. S.D.N.Y. 2008) ("'[A] determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor. . . .'") (quoting *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 252 (4th Cir. 1987));

*see also Desmond v. Varrasso (In re Varrasso),* 37 F.3d 760, 764-65 (1st Cir. 1994) ("While we do not doubt that a factfinder lawfully might draw an inference of fraud from the totality of the circumstances, we simply do not believe that this evidence *compels* such an illation. Therefore, summary judgment should not have been granted.") (footnote omitted); *Barr v. Overmyer (In re Overmyer),* 121 B.R. 272, 281 (Bankr. S.D.N.Y. 1990) (denying Trustee's summary judgment motion to deny discharge under Section 727(a)(4)(A) because the court "must have an opportunity to hear evidence to determine Mr. Overmyer's motives and states of mind. . . ."). Here, the Bankruptcy Court erred in making credibility determinations and resolving disputed issues related to Debtor's intent without conducting a trial and hearing testimony.

Viewing the evidence in the light most favorable to the Debtor, and drawing all reasonable inferences in his favor, this Court concludes that genuine issues of material fact exist to survive summary judgment on the issue of whether Debtor knowingly and willingly make false statements with the intent to defraud his creditors. Accordingly, the Court concludes that the Bankruptcy Court erred in granting summary judgment on the sixth count. Debtor is entitled to an trial, where the parties will have the opportunity to present their evidence, including testimony, to the Bankruptcy Court on that issue.

V. Conclusion

For the foregoing reasons, the Court finds that the Bankruptcy Court erred in granting partial summary judgment on the Section 523(a)(2)(A) claim and the Section 727(a)(4)(A) claim and, therefore, reverses the June 13, 2005 Order and remands the case

to the Bankruptcy Court for further proceedings consistent with this Memorandum and Order.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 15, 2008
Central Islip, New York

\* \* \*

The attorney for the Appellant is Shari H Braverman, Esq., of Braverman Law Office PC, 50 Charles Lindbergh Blvd, Suite 400,Uniondale, NY 11553. The attorneys for the Appellees are Bradford D. Conover, Esq., of Conover Law Offices, 75 Rockefeller Plaza, 20th Floor, New York, NY 10019, and David H. Wander, Esq., of Wander & Associates, P.C., 21st Floor, New York, NY 10022.

0